## A03A0234. THE STATE v. FULGHUM.
(583 SE2d 278)

MILLER, Judge.

The State charged John Timothy Fulghum with possession of methamphetamine and possession of dangerous drugs (buspirone) based on evidence police found in his residence during a search for Mr. Fulghum's children. Mr. Fulghum moved to suppress the evidence, arguing that police conducted the warrantless search without valid consent. The court agreed and suppressed the evidence. The State appeals, contending that Mrs. Fulghum gave voluntary consent. Based on our de novo review, we find that Mrs. Fulghum was coerced into giving her consent. Therefore, we affirm.

The undisputed evidence shows that after the Fulghums' attorney had obtained a continuance of a deprivation hearing concerning their children, a court mistakenly ordered that the children be taken into State custody on the ground that the Fulghums did not appear for the deprivation hearing. Police accompanied a State caseworker to the Fulghums' residence to execute the order. Mrs. Fulghum, who was home alone, answered the door and told the police that the children were not home. The lead officer told Mrs. Fulghum that he had an order to pick up the children and that he and the other officers needed to come in and make sure that the children were not there. Mrs. Fulghum allowed the police to enter the home.

During their search for the absent children, police discovered methamphetamine and buspirone in the back bedroom. The court by phone informed police at the residence that the temporary custody order was a mistake, and police left. Mr. Fulghum, who was later charged with possession of the drugs, moved the court to suppress the contraband on the ground that police had no warrant or valid consent to search his residence. During the evidentiary hearing, only the lead officer testified to the facts set forth above and further stated that whenever he had a temporary custody order and the parents stated the children were not home, "then I just explain that, well, I need to come in and just look for myself and make sure that they're not there." Based on this evidence, the court found no voluntary consent and suppressed the evidence.

1. As in *State v. Jackson*, 201 Ga. App. 810, 813, n. 3 (412 SE2d 593) (1991), the trial court did not question the credibility of the sole witness (here, the lead officer) at the motion to suppress hearing, but relied on his undisputed testimony to support its findings of fact and conclusion that Mrs. Fulghum's consent was not free and voluntary. "Consequently, we review the trial court's application of the law to the facts de novo, examining the entire record and making an independent determination of the ultimate issue of voluntariness." (Citations and punctuation omitted.) Id., citing *Beckwith v. United States*,

425 U. S. 341, 348 (96 SC 1612, 48 LE2d 1) (1976); see *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) ("[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. [Cits.]").

2. Here the police had no search warrant or arrest warrant. All they had was an order awarding temporary custody of the Fulghum children to the State. This order did not purport to authorize a search of the Fulghum residence. Compare *Martin v. Hendon*, 224 Ga. 221 (160 SE2d 893) (1968) (temporary custody order directed sheriff to search the parents' homes for the child). Since exigent circumstances are not alleged, the only basis on which police could constitutionally search the Fulghum residence was if Mrs. Fulghum gave them valid consent to do so. See *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996); *Welchel v. State*, 255 Ga. App. 556, 558 (565 SE2d 870) (2002).

When seeking to justify a warrantless search, the State carries the burden of showing "that the consent was freely and voluntarily given." (Citations and punctuation omitted.) *State v. Davis*, 261 Ga. 225, 226 (404 SE2d 100) (1991), quoting *Bumper v. North Carolina*, 391 U. S. 543, 548 (88 SC 1788, 20 LE2d 797) (1968). In this case, the State had the burden of showing that Mrs. Fulghum made a " 'free and unconstrained choice' " in consenting to a search of her home. *Davis*, supra, 261 Ga. at 226, quoting *Schneckloth v. Bustamonte*, 412 U. S. 218, 225 (93 SC 2041, 36 LE2d 854) (1973). "Thus, close judicial scrutiny of an alleged consent to search is necessary." *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975); see *Corley v. State*, 236 Ga. App. 302, 306 (1) (b) (512 SE2d 41) (1999).

The alleged consent by Mrs. Fulghum fails to withstand this scrutiny for two reasons. First, it was not an express consent. The officer testified that after he informed her that he had a temporary custody order and that he and his fellow officers accordingly needed to inspect the premises to ensure the children were not there, "she allowed us to come in the home." The officer did not state either that he asked for consent to search the residence or that she expressly consented to a search of the residence; rather, at most there was implied consent.

Under similar circumstances, *Clare v. State*, 135 Ga. App. 281, 285 (3) (217 SE2d 638) (1975), suppressed evidence from a search where the officer told the occupant of an apartment that neighbors were complaining about a noise from the apartment, and the occupant agreed he had heard the noise and turned and went back inside, with the officer following and conducting a search. *Clare* explained:

> Since the officer never sought defendant's permission to enter the apartment, we are unable to discern how defend-

ant could possibly have consented to the intrusion. *The notion of "implied consent" advanced in support of this search has no basis within the context of Fourth Amendment rights.* We therefore conclude that the [S]tate has failed to meet its burden of showing that consent for the search was in fact given.

(Emphasis supplied.) Id. For the same reason, the State has failed to meet its burden here.

Second, even if express consent were shown, that consent was not voluntary. "A consent which is the product of coercion or deceit on the part of the police is invalid." *Code,* supra, 234 Ga. at 93 (III), citing *Bumper,* supra; accord *Palmer v. State,* 257 Ga. App. 650, 653 (2) (572 SE2d 27) (2002). Quoting a lower court decision, the United States Supreme Court in *Bumper* explained one form of coercion or deceit:

> "Orderly submission to law-enforcement officers who, *in effect,* represented to the defendant that they had the authority to enter and search the house, against his will if necessary, was not such consent as constituted an understanding, intentional and voluntary waiver by the defendant of his fundamental rights under the Fourth Amendment to the Constitution."

(Citation omitted; emphasis supplied.) 391 U. S. at 549, n. 14. Indeed, "where deceit is used to obtain a consent, e.g., when an officer represents to an accused that he has authority to search, when actually he does not, a resultant consent by the accused to the search is invalid." *Code,* supra, 234 Ga. at 95 (III). Under such circumstances, "the consent is merely a submission to an apparent legitimate display of legal authority to which all are required to submit. [Cit.]" Id.; see *State v. Hall,* 229 Ga. App. 194, 197 (2) (c) (493 SE2d 718) (1997) (on these grounds, grant of motion to suppress affirmed); *Darby v. State,* 216 Ga. App. 781, 783 (2) (455 SE2d 850) (1995) (on these grounds, denial of motion to suppress reversed).

Here the undisputed evidence shows that in response to Mrs. Fulghum's statement that the children were not at home, the lead officer announced that he had a temporary custody order in hand and that he and the other police accordingly "needed" to enter the residence to ensure for themselves that the children were not in the home. The order did not authorize them to search the home, and the officer did not ask for permission to search the home. Compare *Buckholts v. State,* 247 Ga. App. 697, 699 (2) (545 SE2d 99) (2001) (officer asked defendant "whether he minded if he searched the resi-

dence," to which defendant agreed). Rather, the clear import of the officer's statement was that he had the lawful authority to search the premises, with or without consent, and that he intended to do so. The totality of the circumstances showed that Mrs. Fulghum's allowing police in was only an acquiescence to the officer's claim of lawful authority and was therefore not a voluntary consent free from express or implied coercion. See *Bumper*, supra, 391 U. S. at 548-549 (consent is not shown where there is "no more than acquiescence to a claim of lawful authority") (footnote omitted); *Code*, supra, 234 Ga. at 93 (III) (voluntary consent must be free from express *or implied* coercion to be determined from all the circumstances); *Palmer*, supra, 257 Ga. App. at 653 (2) ("Whether the consent was coerced is a question of fact to be determined based upon the totality of circumstances. [Cits.]").

For these reasons, we hold that the trial court did not err in granting Mr. Fulghum's motion to suppress.

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JUNE 11, 2003.

Patrick H. Head, District Attorney, Amy H. McChesney, *Assistant District Attorney*, for appellant.

*Kenneth R. Croy*, for appellee.